UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **2140 EDMONDSON AVE, LLC** )<br>**C/O CECIL CLARKE** )<br>**13408 Querry Mill Road** )<br>**North Potomac, MD 20878** )<br>)<br>    **Plaintiff,** )<br>)<br>        v. )<br>)<br>**CERTAIN UNDERWRITERS AT** )<br>**LLOYD'S LONDON SUBSCRIBING TO** )<br>**POLICY NO. TCWP240030050** )<br>**One Lime Street** )<br>**London, EC3M 7 HA, United Kingdom** )<br>)<br>**SERVE ON:** )<br>    **Maryland Insurance Administration** )<br>    **200 Saint Paul Place, Suite 2700** )<br>    **Baltimore, Maryland  21202** )<br>)<br>and )<br>)<br>**CONVEX  INSURANCE UK LIMITED** )<br>**52 Lime Street** )<br>**London, EC3M 7AF, United Kingdom** )<br>)<br>**SERVE ON:** )<br>    **Maryland Insurance Administration** )<br>    **200 Saint Paul Place, Suite 2700** )<br>    **Baltimore, Maryland  21202** )<br>)<br>        **Defendants.** ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff  2140 Edmondson Ave, LLC c/o Cecil Clarke ("2140 Edmondson Ave") by its undersigned counsel, hereby sues Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. TCWP240030050 ("Certain Underwriters") and Convex Insurance

1

UK Limited ("Convex) for breach of contract, statutory bad faith, and for damages:

## Parties

1. Plaintiff 2140 Edmondson Ave is a Maryland limited liability company whose sole member is Cecil Clarke, a resident of Maryland.

2. Defendant Certain Underwriters is a London-based insurance market that issued quota share coverage for Plaintiff's property.

3. Defendant Convex is a company registered in England and Wales that also issued quota share coverage for Plaintiff's property.

4. Collectively, Certain Underwriters and Convex are referred to as "Insurers".

## Jurisdiction and Venue

5. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between 2140 Edmondson Ave, which is a citizen of Maryland, and Defendants Certain Underwriters and Convex, which on information and belief are both foreign citizens, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court because the property that is the subject of the action is situated in this district. *See* 28 U.S.C. § 1391(b)(2).

## Facts Common to All Counts

7. Plaintiff purchased the property located at 2140 Edmondson Avenue, Baltimore, Maryland, (the "Property") in 2004.

8. The Property consists of two buildings: a 110,000 square-foot four-story warehouse building that faces Edmondson Avenue and 4,000 square-foot building on the back of the property with the address of 2205 West Lanvale Street.

9. Mr. Clarke is a real estate investor and over the years has leased out the bottom

floor of the Edmondson Avenue building and used the upper floors as office space and to store construction materials and equipment for Mr. Clarke's construction business.

10. In the last several years, starting in approximately 2022, Mr. Clarke has spent over $800,000 renovating the Property, including replacing the roof, resurfacing the parking lot, replacing all lighting for the interior and exterior of the Property, redoing much of the electrical lines, including the fuse box, updating bathrooms and kitchen, installation of heat pumps on the first floor, as well as painting and other cosmetic upgrades.

11. On August 1, 2024, Plaintiff executed a one-year lease with Allan Qadir d/b/a Mattress Spot to lease the bottom floor of the warehouse.

12. Mr. Allan Qadir wanted to sign a five-year lease so that he could make capital improvements to the space without worrying that he might lose the lease but agreed to the initial one-year term as a trial period.

13. In April 2025, Mr. Clarke and Mr. Qadir executed a second, four-year lease, set to begin August 1, 2025 and running through July 31, 2029.

14. Unfortunately, starting on the evening of May 12, 2025, there was a catastrophic, 7-alarm fire at the Property.

15. Over 200 Baltimore City firefighters responded and after the fire was out, the City of Baltimore condemned the Property due to the severity of the damage.

16. Plaintiff immediately contacted Goodman Gable & Gould, a public adjuster firm with which it had a prior relationship, to assist it with preparing its insurance claim.

17. Plaintiff also contacted its insurance agent, Hartford General Insurance Agency, to submit the claim under its property insurance policy.

18. The Property was insured under certificate number TCWP240030050 by the

Insurers for the policy period July 11, 2024, through July 11, 2025 (the "Policy"). *See* Exhibit 1.

19. The Policy is shared by Certain Underwriters, whose participation (through various syndicates) is 79.45%, and Convex, whose participation is 20.55%. *See id.*

20. The Policy provides a total of $5,100,000 in commercial property policy limits, broken down as $4,800,000 for Building 1, $200,000 for Building 2, $50,000 for Business Income, and $25,000 per Covered Property for Debris Removal. *See id.*

21. The Policy provides blanket building coverage with the limits indicated for damage "to Covered Property . . . caused by or resulting from any Covered Cause of Loss".

22. As stated in the Cause of Loss- Special Form, "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." As such, the Policy is an "all-risk" policy and covers all perils unless explicitly excluded.

23. Fire is not an excluded peril.

24. After the fire, the U.S. Bureau of Alcohol, Tobacco, and Firearms ("ATF") became involved with the fire investigation at the request of the Baltimore City Fire Department due to the size and severity of the fire/building involved.

25. On July 18, 2025, as part of its investigation ATF interviewed Mr. Clarke, as the owner of the Property, concerning the fire and conducted a polygraph examination.

26. Mr. Clarke has additionally fully cooperated with the Insurers, providing voluminous documentation and information to substantiate his claim and the valuation of his damages.

27. On August 4, 2025, in recognition that fire is a covered cause of loss, the Insurers issued payment in the amount of $312,927.04 to additional insured Dynasty LLC to pay of the balance of its mortgage on the Property.

28. On August 8, 2025, Plaintiff submitted a sworn statement affirming that Mr. Clarke had no involvement or knowledge regarding the fire and a partial proof of loss to the Insurers demanding $2,000,000 in partial payment for its claim so that it can proceed with mitigation and demolition at the site to prevent further destruction or injury and in light of concerns raised by Baltimore City and the owners of neighboring properties. *See* Exhibits 2 and 3.

29. On September 5, 2025, now nearly four months after the fire, Plaintiff again demanded payment of its claim, advising that Mr. Clarke has satisfied all conditions and obligations under the Policy and that coverage is indisputable absent the insured's hypothetical involvement in the fire, of which no evidence has been presented or even suggested by ATF or the Insurers.

30. The Insurers responded on September 8, 2025, by trying to justify their delay in making a coverage decision by stating that ATF confirmed the fire is the subject of an active criminal investigation; that ATF has not finalized its origin & cause report; that no one has been eliminated as a suspect; that the Insurers' origin & cause expert believes the fire may have been incendiary; and that a digital recording device was recovered from the scene and they are attempting to determine whether there is any relevant video recoverable from the device. The Insurers also stated that they anticipated requesting the insured's Examination Under Oath ("EUO").

31. On September 13, 2025, the Insurers requested additional documentation in anticipation of scheduling Mr. Clarke's EUO, and Plaintiff promptly provided this documentation on September 16, 2025.

32. On September 18, 2025, Plaintiff submitted a fully completed, notarized Sworn

Statement in Proof of Loss, demanding payment of its claim for $4,787,072.96 (representing the policy limits minus the prior payment to the Lender). *See* Exhibit 4.

33. On September 23, 2025, the Insurers requested several additional documents and requested clarification on some of the information previously provided, and Plaintiff responded the same day providing a detailed response and additional documentation.

34. On October 17, 2025, Mr. Clarke sat for his EUO conducted by counsel for the Insurers.

35. On November 7, 2025, now nearly six months after the fire, the Insurers, through counsel, issued a letter refusing to make the demanded claim payment and again advising that they were continuing to investigate the claim, based on the previously referenced ongoing ATF investigation, which, to date and on information and belief has still not finalized its own origin & cause report, has not provided any indication that the insured, Mr. Clarke, is implicated in its investigation, and has not provided any timeline for the completion of its investigation. *See* Exhibit 5.

36. This letter reserves the Insurers' rights to rely on the following Policy provisions to deny coverage:

> **2.** We will not pay for loss or damage caused by or resulting from any of the following:
> \*\*\*
> **h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.
> This exclusion:
> **(1)** Applies whether or not an act occurs during your normal hours of operation;
> **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by you

employees (including temporary employees and leased workers) or authorized representatives is not covered.

\* \* \*

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;
**2.** The Covered Property;
**3.** Your interest in the Covered Property; or
**4.** A claim under this Coverage Part.

\* \* \*

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:
\*\*\*
**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
**(7)** Cooperate with us in the investigation or settlement of the claim.
\*\*\*
**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

*See id.*

37. The Insurers also provided a copy of the report from their origin & cause expert dated October 30, 2025, which report states that the cause of the fire was not specifically determined, and further states that the Casuse Classification of the fire is undetermined.

38. The Insurers refuse to pay the claim despite the Plaintiff having satisfied all conditions of the Policy and despite there being no indication by the ATF or the Insurer to suggest an active/ongoing investigation of the Plaintiff (or anyone else for that matter) – let alone

an arson investigation implicating the Plaintiff in any capacity.

39. In fact, Plaintiff has not received any information or documentation from the ATF – or from any other entity or agency – confirming that a criminal investigation is ongoing or pending, such that the status or results of any investigation that may have been conducted or completed are entirely unknown to Plaintiff at this time.

40. Moreover, the Insurers' own origin & cause report has not supported nor determined an act of arson in this case but merely states that it cannot be ruled out.

41. Plaintiff hired a structural engineer to assess the Property after the City issued the condemnation notice, and the engineer has advised that the damage is so extensive that it is more feasible to demolish the remaining structures than to perform repairs.

42. Plaintiff has already incurred the cost of its structural engineer in addition to the cost to secure the Property without reimbursement from its Insurer, despite having procured a commercial property insurance policy to protect it against such losses.

43. Plaintiff further faces significant liability exposure while the building remains in a precarious and unstable condition that poses potential harm to surrounding properties.

44. Plaintiff also will have to bear the costs to demolish the Property and for its other losses, including its lost business income and property damage losses, which exceed the value of the policy limits if the Insurers continue to deny coverage.

## Count I
## Breach of Contract

45. Plaintiff incorporates and reaffirms each of the paragraphs of this Complaint as if fully and completely set forth herein.

46. The Insurers issued the Policy covering the Property for the time period at issue.

47. The Insurers breached the Policy when they repeatedly refused to pay the claim

submitted in the Proof of Loss and continue to stall without any justifiable basis.

48. As a result of the Insurers' breach, Plaintiff has suffered direct and consequential damages.

## Count II
## Lack of Good Faith

49. Plaintiff hereby reincorporates and reaffirms each of the paragraphs of this Complaint, as if fully and completely set forth herein.

50. The Policy was issued in Maryland.

51. Maryland's bad faith statute, set forth in Md. Code. Ann., Cts. & Jud. Proc. § 3-1701, provides that:

> (e) Recovery. -- Notwithstanding any other provision of law, if the trier of fact in an action under this section finds in favor of the insured and finds that the insurer failed to act in good faith, the insured may recover from the insurer:
>
>> (1) Actual damages, which actual damages may not exceed the limits of the applicable policy;
>>
>> (2) Expenses and litigation costs incurred by the insured in an action under this section or under § 27-1001 of the Insurance Article or both, including reasonable attorney's fees; and
>>
>> (3) Interest on all actual damages, expenses, and litigation costs incurred by the insured, computed:
>>
>>> (i) At the rate allowed under § 11-107(a) of this article; and
>>>
>>> (ii) From the date on which the insured's claim would have been paid if the insurer acted in good faith.

52. The statute defines "good faith" as "informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." *See* Md. Code. Ann., Cts. & Jud. Proc., § 3-1701(a)(5).

53. The Insurers lacked good faith in refusing to pay Plaintiff's claim because this is not an informed decision based on honesty and diligence supported by the evidence that the

Carriers knew or should have known at the time they made their claim decision.

54. Mr. Clarke has promptly, diligently and fully cooperated with all investigating authorities, including providing a polygraph interview to ATF; sitting for an Examination Under Oath with the Insurers; and providing all documentation requested by the Insurers.

55. It is now over six months from the date of the fire.

56. There is no evidence to support a claim denial.

57. The Insurers know that there is no evidence to support their claim denial.

58. The only basis stated by the Insurers to stall making the claim payment is that the ATF investigation is reportedly still active.

59. ATF has not provided any indication that the Plaintiff may be culpable for the fire or that it has even concluded the fire was a result of arson.

60. The ATF investigation could extend indefinitely and there is no assurance that ATF will share the results of its investigation with the Insurers.

61. The Insurers cannot indefinitely stall Plaintiff's claim payment without any evidence of to implicate Plaintiff with respect to the fire.

62. It is dishonest for the Insurers to withhold the money owed to Plaintiff for its legitimate claim.

WHEREFORE, Plaintiff demands judgment in its favor and against the Insurers for the amount of its loss together with interest, attorneys fees, and costs, and any other relief that this Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all issues triable to a jury.

Respectfully submitted,

   */s/ Brian S. Goodman*
Brian S. Goodman (Bar No. 03212)
Goodman Law Group
9199 Reisterstown Road, Suite 213C
Owings Mills, Maryland 21117
(443)-824-0659 Telephone
1 (410) 559-7100 Facsimile
*Attorneys for Plaintiff*